**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | |
|---|---|
| JAMES CUZZORT, | Case No. |
| 222 Mulberry Street | |
| Rising Sun, IN 47040 | Judge: |
| | |
| And | |
| | |
| TERRY COLLINS | |
| 256 Erlanger Road | |
| Erlanger, KY 41018 | **CLASS ACTION COMPLAINT** |
| | **WITH JURY DEMAND** |
| And | **INDORSED HEREIN** |
| | |
| SARA HAUENSTEIN | |
| 600 NW 80th Ave. | |
| Ocala, FL 34482 | |
| | |
| On Behalf of Themselves and All Others | |
| Similarly Situated | |
| | |
| Plaintiffs, | |
| | |
| v. | |
| | |
| WEST CHESTER HOSPITAL, LLC | |
| 7700 University Drive | |
| West Chester, Ohio 45069 | |
| | |
| **SERVE:** GH&R BUSINESS SVCS., INC. | |
| 312 Walnut Street, Suite 1800 | |
| Cincinnati, Ohio 45202 | |
| | |
| and | |
| | |
| UC HEALTH, LLC | |
| | |
| **SERVE:** GH&R BUSINESS SVCS., INC. | |
| 312 Walnut Street, Suite 1800 | |
| Cincinnati, Ohio 45202 | |
| | |
| Defendants. | |

Come now Plaintiffs James Cuzzort ("Cuzzort"), Terry Collins ("Collins") and Sara Hauenstein ("Hauenstein") (each a "Plaintiff" and collectively "Plaintiffs"), individually and on behalf of those similarly situated, by and through counsel, and for their Class Action Complaint (the "Complaint") against Defendants West Chester Hospital, LLC ("WCH") and UC Health, LLC. ("UCH") (each a "Defendant" and collectively "WCH/UCH" or "Defendants"):

## I.  NATURE OF THE ACTION

This action arises from the fraud perpetrated by Defendants upon patients of Abubakar Atiq Durrani ("Durrani"), a spine surgeon who fled the United States after being indicted on various federal charges including Medicare fraud for performing unnecessary surgeries. Over the course of five (5) years from 2009-2013 at Defendants' location, Durrani performed thousands of spinal surgeries and built a very lucrative practice. During these surgeries, Durrani, with Defendants' knowledge, but without the patients' knowledge or consent, fraudulently implanted in his patients BMP-2/Infuse, a drug approved for very limited usages and designed to promote bone growth. When improperly used, BMP-2 carries very significant health risks. Looking to profit from Durrani's financial success, Defendants knowingly allowed Durrani to implant BMP-2/Infuse in patients and concealed its improper use by submitting false billings, falsifying medical records and preparing and providing false operative reports for patients and insurance companies. As a result of Defendants' fraudulent actions and/or inactions, Plaintiffs and putative class members ("Class Members") were fraudulently charged and paid for treatment that was not only unnecessary but also damaging to their health.

While over 500 of Durrani's patients have filed individual actions against Durrani and/or Defendants, based upon Durrani's operating schedule with Defendants, there are hundreds if not thousands of Durrani's former patients who still do not know that they have wrongfully received BMP-2/Infuse.  Those patients are unaware of the fraud perpetrated on them by both Defendants

and Durrani because Durrani and Defendants failed to disclose it to them prior to or after its placement, and concealed it in their billing statements and intraoperative reports. The use of BMP-2/Infuse was not discovered by the three named Plaintiffs until their respective billing statements and intraoperative reports were reviewed in the past year. Class Members have not and could not have reviewed these two items. This lawsuit is designed to address those Durrani's patients who have suffered financial damages in that, unbeknownst to them, they have been charged for services they did not request and whose life may now be in danger. Plaintiffs therefore, seek on behalf of themselves and those similarly situated compensatory, punitive damages and an award of attorney fees and costs incurred in prosecuting this action.

## II.      BACKGROUND INFORMATION

### What is BMP-2/Infuse?

Bone morphogenetic proteins ("BMP") are key factors for bone regeneration and healing. Recombinant DNA techniques are used to produce in laboratory setting BMP-2 as an alternative to bone grafting of a patient own bone ("auto-graft bone") to enhance healing of bony defects and factures where auto-graft bone harvest is not feasible or is contraindicated. BMP-2 has been shown to stimulate the production of bone. BMP-2 is not a device, but instead it is a biologic. [1] BMP-2 is manufactured, marketed, sold, and distributed by Medtronic, an Irish corporation, with its principal executive office located in Dublin, Ireland, and its operational headquarters located in Minneapolis, Minnesota, under the trade name of Infuse.

BMP-2/Infuse is used for orthopedic applications such as spinal fusions, non-unions, and oral surgery. FDA-approved use for BMP-2/Infuse is only for lower back surgery using an anterior lumbar interbody fusion (ALIF), a technique where the operation on the spine is conducted through

---

[1] According to the United States Food and Drug Administration ("FDA"), "[a] 'biological product' means a virus, therapeutic serum, toxin, antitoxin, vaccine, blood, blood component or derivative, allergenic product, or analogous product, or arsphenamine or derivative of arsphenamine (or any other trivalent organic arsenic compound), applicable to the prevention, treatment, or cure of a disease or condition of human beings.

the abdomen. In addition, BMP-2/Infuse must be used in conjunction with Medtronic's LT-Cage. Use of BMP-2 without the LT-Cage is considered an "off-label" use.

BMP-2/Infuse differs from a medical device in that once implanted, it can only be removed days after surgery. If a patient had a complication due to BMP-2/Infuse and did not discover this complication until a year after surgery, the patient could not have BMP-2 removed to reduce the complications because BMP-2 has integrated into the patient's bone.

The FDA specifically warns against the use of BMP-2/ Infuse in the cervical spine, citing reports of "life-threatening complications." Any use of BMP-2/Infuse other than in lumbar spine surgeries with the LT-Cage is considered "off-label" use. Significant risks are associated with off-label use as indicated by the labeling and packaging of BMP-2/ Infuse. [2]

BMP-2/Infuse was NOT approved by the FDA for use in the cervical and thoracic spine and BMP-2 /Infuse was NOT safe or approved for use in children less than 21 years of age. These uses are considered "off-label." WCH/UCH intentionally and knowingly allowed Durrani to perform spinal surgeries repeatedly using BMP-2/Infuse in these non-FDA-approved manners and to hide its through fraudulent billing and fraudulent reporting either intentionally negligently, fraudulently or with reckless disregard for Plaintiffs and Class Members' health and safety in order to profit financially from these surgeries.

### III. JURISDICTION

1. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed class consists of 100 or more members; the amount in controversy exceeds $5,000,000.00, exclusive of costs and interest; and minimal diversity exists.

---

[2] The list is very extensive and includes cancer, increased progression of existing cancer, m ale sterility, bone fractures, bowels/bladder problems, suffocation of the cervical region, loss of spinal mobility or function, change in mental status, damages to blood vessels and cardiovascular system, damage to internal organs and connective tissue, death, gastrointestinal complication

This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## IV.   VENUE

2.     Plaintiffs reallege and incorporate by reference as if fully rewritten the previous paragraph of this Complaint.

3.     Venue is proper in the Southern District of Ohio under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendants transact business in this District and did so at all times relevant to this Complaint and all the actions giving rise to this action occurred in this District.

## V.   PARTIES

4.     Plaintiffs reallege and incorporate by reference as if fully rewritten the previous paragraphs of this Complaint

5.     James Cuzzort is an individual who resides in the State of Kentucky and was a patient of Durrani who underwent surgery at WCH/UCH.

6.     Terry Collins is an individual who resides in the State of Kentucky and was a patient of Durrani and who underwent surgery at WCH/UCH.

7.     Sara Hauenstein is an individual who resides in the State of Kentucky and was a patient of Durrani who underwent surgery at WCH/UCH.

8.     UC Health, is an Ohio limited liability company, providing hospital services to the greater West Chester Area and Southwest Ohio in general.

9.     UC Health provides medical facilities, management, administrative, ancillary and billing support to physicians, including Durrani and West Chester Hospital.

10.     West Chester Hospital, LLC is an Ohio limited liability company owned by UC Health, which provides hospital services to the greater West Chester Area and Southwest Ohio in general.

11.     WCH provides medical facilities and billing support to physicians, including Durrani.

12.     WCH/UCH granted Durrani's medical, surgery and admitting privileges from sometime in 2009 through sometime in 2013.

13.     At all times relevant herein, Defendants held themselves out to the public, including by their marketing and promotional campaigns and specifically to Plaintiffs and Class Members, as hospitals providing competent and qualified medical and nursing services, care and treatment by and through their physicians, physicians in training, residents, nurses, agents, ostensible agents, servants and/or employees.

## VI.     SUBSTANTIVE ALLEGATIONS

### 1.  Defendants' Willful Ignorance of the FDA Warnings

14.     Plaintiffs reallege and incorporate by reference as if fully rewritten the previous paragraphs of this Complaint.

15.     On July 1, 2008, the FDA sent a notification to health care practitioners all across the United States, including Defendants, warning of the complications associated with BMP-2/Infuse, specifically when used in the cervical spine.

16.     In the notification, the FDA stated it received at least 38 reports of complications during the prior four years with the use of BMP-2/Infuse in cervical spine fusions.

17.     The complications were associated with swelling of the neck and throat areas, which resulted in compression of the airway and/or neurological structures in the neck.

6

18.     Some reports describe difficulty swallowing, breathing or speaking and severe dysphagia following cervical spine fusion using BMP-2/Infuse products had also been reported.

19.     The notification further stated that, "since the safety and effectiveness of [BMP-2] for treatment of cervical spine conditions has not been demonstrated, and in light of the serious adverse events described above, FDA recommends that practitioners either use approved alternative treatments or consider enrolling as investigators in approved clinical studies."

20.     The notification also stated that the FDA did not approve the use of BMP-2/Infuse on children under the age of 18. It also required hospitals and other user facilities to report deaths and serious injuries associated with the use of medical devices which Defendants failed to do as it relates to Durrani's surgeries and treatment.

21.     Defendants had actual or constructive notice of these warnings, ignored ALL of these warnings and allowed Durrani to use BMP-2/Infuse in cervical spine surgeries, children, and those with known compromising factors highlighted by the FDA and hid its use through fraudulent billing and reporting.

### 2.   Defendants' Participation in Durrani's Fraudulent Conduct

22.     David Rattigan, a representative of Medtronic was often present in Durrani's operating rooms as a representative of Medtronic.

23.     David Rattigan's sole job was to deliver the BMP-2/Infuse to hospitals, and Defendants in particular, and make sure that it was inserted correctly into the patient during surgery.

24.     David Rattigan's and Defendants' employees in the operating room witnessed the improper and fraudulent use of BMP-2/Infuse.

25.     When David Rattigan was not present, another representative from Medtronic was present.

26.      Dennis Robb, Senior Vice President of Operations and Chief Supply Officer for UCH ("Robb") was intimately familiar with BMP-2/Infuse and was in charge of acquiring BMP-2/Infuse for UCH, which would then keep an inventory of BMP-2/Infuse and supply and distribute it to the Defendants out of the warehouse as needed.

27.     Robb would place an order with Medtronic, Medtronic would deliver BMP-2/Infuse to the UC Health Business Center warehouse, and Robb would do a three-way match based on what he ordered, what Medtronic delivered, and the price quoted by Medtronic.

28.     BMP-2/Infuse would then be distributed from the UC Health Business Center warehouse almost on a daily basis (five to six times a week) based on the inventory demand. UC Health Business Center warehouse would deliver it to WCH as needed.

29.     UCH, by ordering, storing, supplying, and distributing BMP-2/Infuse to its Defendants as needed for surgeries was aware of the large quantities used in at UCH and WCH.

30.     Despite being aware of the dangers and contraindications of BMP-2/Infuse and of the amounts of BMP-2/Infuse ordered, distributed and supplied at their facilities, Defendants knowingly and purposefully overlooked the FDA notifications and allowed and encouraged Durrani to pursue surgical procedures that improperly used BMP-2/Infuse for financial gain.

31.     In or around December 2008, Cincinnati Children's Hospital Medical Center ("Children's") terminated Durrani's medical, surgery and admitting privileges based upon failure to timely dictate operative reports and discharge summaries; ethical issues arising from his relationship with his physician's assistant and other misconduct.  In his own words, Durrani referenced "inhospitable atmosphere."

32.     At all times relevant to this action, Defendants knew or should have known of Durrani's questionable credentials and colored past while on the staff of other hospitals in Southwest Ohio. In fact, WCH and UCH collaborate on programs with Children's and they share knowledge through their boards, administration and medical staff.

33.     In early 2013, allegations that Durrani had for years subjected his patients at various hospitals in Southwest Ohio to unnecessary and dangerous surgeries without their knowledge or informed consents as part of a financial scheme surfaced and over five hundred of civil medical malpractice lawsuits were filed against him and related parties.

34.     In addition to those civil medical malpractice lawsuits, on August 7, 2013, the Federal Government indicted Durrani for performing unnecessary surgeries and for defrauding the Medicare and Medicaid programs. Specifically, the ten-count complaint charged Durrani with health care fraud, in violation of 18 U.S.C. § 1347, and making false statements in health care matters, in violation of 18 U.S.C. § 1035. A superseding indictment followed which resulted in a 33-count indictment.

35.     Following these criminal indictments, and prior to the first civil trial, Durrani fled the United States for Pakistan in November of 2013. He has not returned to the United States to face the allegations of either criminal or civil liability.

### 3.  The Plaintiffs

36.     Following Durrani's recommendations, Collins underwent spinal surgery on March 5, 2011 at WCH/UCH.

37.     During his consultations with Durrani prior to the surgery, Durrani never mentioned the use of BMP-2/Infuse to Collins prior to or after his surgery at any time.

38. Durrani, without Collins' knowledge and consent used BMP-2/Infuse during the course of the surgery.

39. WCH/UCH billed Collins and/or his insurance provider for the use of BMP-2/Infuse by Durrani an amount of $24,488.16.

40. Collins and/or his insurance provider paid all or part of that amount.

41. In order to hide from Collins that BMP-2/Infuse was improperly placed in him during surgery, Collins' billing statement failed to disclose the use of BMP-2/Infuse in connection with his surgery.

42. Rather, Collins' billing statement shows a line item of "OR Allografts" which upon information and belief, corresponds to the cost of BMP-2/Infuse during his surgery.

43. Likewise, Collins' operative report fails to disclose the use of BMP-2/Infuse but its use is disclosed in the intraoperative report. Durrani was responsible for the operative report while the circulating nurse for WCH prepared the intraoperative report.

44. Defendants provided Collins and/or his insurance provider with a fraudulent billing statement. Defendants never provided him with the intraoperative report.

45. Accordingly, Collins was unable to discover that he was wrongfully billed for a service to which he did not consent until his billing records and intraoperative report was reviewed in the past year.

46. Following Durrani's recommendations, Hauenstein underwent spinal surgery on January 13, 2010 at WCH/UC.

47. During her consultations with Durrani prior to the surgery, Durrani never mentioned the use of BMP-2/Infuse to Hauenstein prior to or after her surgery at any time.

48. Durrani, without Hauentstein's knowledge and consent used BMP-2/Infuse during the course of the surgery.

49. WCH/UC billed Hauenstein and/or her insurance provider for the use of BMP-2/Infuse by Durrani an amount of $16,303.65.

50. Hauenstein and/or her insurance provider paid all or part of that amount.

51. In order to hide from Hauenstein that BMP-2/Infuse was improperly placed in her during surgery, Hauenstein's billing statement failed to disclose the use of BMP-2/Infuse in connection with her surgery. A true and accurate copy of Hauenstein's billing statement is attached hereto as Exhibit C.

52. Rather, Hauenstein's billing statement shows a line item "OR Allografts" which upon information and belief, corresponds to the cost of BMP-2/Infuse during her surgery.

53. Likewise, Hauenstein's operative report fails to disclose the use of BMP-2/Infuse but its use is disclosed in the intraoperative report. Durrani was responsible for the operative report while the circulating nurse for WCH prepared the intraoperative report.

54. Defendants provided Hauenstein and/or her insurance provider with a fraudulent billing statement. Defendants never provided her with the intraoperative report.

55. Accordingly, Hauenstein was unable to discover that she was wrongfully billed for a service to which she did not consent until her billing records and intraoperative report was reviewed in the past year.

56. Following Durrani's recommendations, Cuzzort underwent surgery beginning on December 10, 2010 at WCH/UC.

57. During his consultations with Durrani prior to the surgery, Durrani never mentioned the use of BMP-2/Infuse to Cuzzort prior to or after his surgery at any time.

11

58. Durrani, without Cuzzort's knowledge and consent used BMP-2/Infuse during the course of the surgery.

59. WCH/UCH billed Cuzzort and/or his insurance provider for the use of BMP-2/Infuse by Durrani an amount of $16,289.59.

60. Cuzzort and/or his insurance provider paid all or part of that amount.

61. In order to hide from Cuzzort that BMP-2/Infuse was improperly placed in him during surgery, Cuzzort's billing statement failed to disclose the use of BMP-2/Infuse in connection with his surgery.

62. Rather, Cuzzort's billing statement shows a line item of "OR Allografts" which upon information and belief, corresponds to the cost of BMP-2/Infuse during his surgery. See Exhibit E.

63. Likewise, Cuzzort's operative report fails to disclose the use of BMP-2/Infuse but its use is disclosed in the intraoperative report. Dr. Durrani was responsible for the operative report while the circulating nurse for WCH prepared the intraoperative report.

64. Defendants provided Cuzzort and/or his insurance provider with a fraudulent billing statement. Defendants never provided him with the intraoperative report.

65. Accordingly, Cuzzort was unable to discover that he was wrongfully billed for a service to which he did not consent until his billing records and intraoperative report was reviewed in the past year.

## VII. TOLLING OF THE STATUTE OF LIMITATIONS

### 4. Discovery Rule Tolling

66.     Because they were never informed of the use of BMP-2/Infuse in connection with their surgeries, Plaintiffs and members of the proposed class ("Class Members") had no way of knowing about Defendants' deception with respect to the use of and billing for BMP-2/Infuse.

67.     Within the time period of any applicable statutes of limitations, Plaintiffs and Class Members could not have discovered through the exercise of reasonable diligence that Defendants were concealing and misrepresenting the use of BMP-2/Infuse in their billing statements and intraoperative reports. This is the quintessential case for tolling.

68.     Plaintiffs and Class Members had no way to discover and did not discover, and did not know of facts that would have caused a reasonable person to suspect, nor would a reasonable and diligent investigation have disclosed that Plaintiffs and members of the proposed class were charged and paid for BMP-2/Infuse were which was discovered by Plaintiffs only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiffs and Class Members have disclosed that Defendants valued profits over Plaintiffs' and Class Members' health, safety and welfare, or the trust that Plaintiffs and Class Members had placed in their representations.

69.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims of Plaintiffs and the proposed class members.

### 5.  Fraudulent Concealment Tolling

70.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment of the inappropriate use of and billing for BMP-2/Infuse throughout the time period relevant to this action.

71.     Instead of disclosing BMP-2/Infuse on Plaintiffs' and Class Members' billing statements, Defendants falsely labelled BMP-2/Infuse on their billing statements so that neither

13

Plaintiffs, Class Members nor their insurance providers could ascertain the improper use, in order to profit from Durrani's lucrative yet unnecessary surgeries.

## 6. **Estoppel**

72.     Defendants were under a continuous duty to disclose to Plaintiffs and Class Members the use of BMP-2/Infuse and the true nature of the charges on their billing statements.

73.     Defendants knowingly, affirmatively, and actively concealed the true nature of the charges billed by them to Plaintiffs and Class Members when they submitted false billing statements to Plaintiffs, Class Members and/or their insurance carriers.

74.     Defendants knowingly and affirmatively and actively concealed the true nature of Plaintiffs' and Class Members' surgeries through falsified intraoperative reports.

75.     Defendants were also under a continuous duty to disclose to Plaintiffs and Class Members that they had engaged in the scheme complained of herein to evade scrutiny and systematically devalued compliance with, and deliberately flouted, FDA regulations in order to increase their profits.

76.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VIII.   **CLASS ALLEGATIONS**

77.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class (the "Class").

> "All patients of Abubakar Atiq Durrani who underwent surgery at WCH which is owned by UCH, whose billing statement and/or intraoperative report discloses that they had BMP-2/Infuse placed in them during such surgery without their knowledge or consent in contraindication to its proper use, and were charged and paid for BMP-2/Infuse.

78. Excluded from the Class are individuals who have already filed personal injury claims or malpractice claims against Defendants related to the unnecessary surgeries and/or improper use of BMP-2/Infuse. Also excluded from the Class are employees of Defendants and their subsidiaries and affiliates; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

79. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

80. This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

81. <u>Numerosity</u>. Federal Rule of Civil Procedure 23(a)(1): The Class Members are so numerous that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than hundreds of Class Members, the precise number of Class Members in the Classes is unknown to Plaintiffs, but may be ascertained from Defendants' books and records. In addition, a review of Durrani's operating schedule at WCH/UC evidences that Durrani performed approximately 633 surgeries at WCH/UC and based on information and belief in 68.5% of those (434), he implanted BMP-2/Infuse without the patient's knowledge or consent. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

82. <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a)      Whether Defendants engaged in the conduct alleged herein;

b)      Whether Defendants knew, should have known or had reasons to know of Durrani's professional misconduct prior to granting him privileges;

c)      Whether Defendants knew, should have known or had reasons to know of the FDA notification warning of the dangers and complications associated with BMP-2/Infuse, specifically when used in the cervical spine and/or the manufacturer's contraindications;

d)      Whether Defendants complied with the FDA notification warning of the dangers and complications associated with BMP-2/Infuse, specifically when used in the cervical spine and/or the manufacturer's contraindications;

e)      What Defendants did, if anything, to comply with the FDA notification warning of the complications associated with BMP-2/Infuse, specifically when used in the cervical spine and/or the manufacturer's contraindications;

f)       Whether Defendants knew, should have known or had reasons to know of the large number of spine surgeries performed by Durrani at Defendants' medical facilities;

g)      Whether Defendants ordered, stored, supplied and distributed BMP-2/Infuse for Durrani;

h)      Whether Defendants knew, should have known or had reasons to know of the large amounts of BMP-2 ordered for, supplied to and used by Durrani;

i)      Whether Defendants concealed the use of BMP-2/Infuse from Plaintiffs and Class Members in their billing statements;

j)      Whether Defendants concealed the use of BMP-2/Infuse from Plaintiffs and Class Members in the intraoperative reports;

k)      Whether Defendants benefitted financially from Durrani's wrongful conduct;

l)      Whether Defendants' conduct violates consumer protection statutes, and other laws as asserted herein;

m)      Whether Plaintiffs and the other Class Members knew, should have known or had reasons to know that BMP-2/Infuse was placed in them during surgery;

n)      Whether Plaintiffs and the other Class Members consented to the use of BMP-2/Infuse during the course of their surgery;

o)      Whether Plaintiffs and the other Class Members relied on Defendants' representations and whether their reliance was foreseeable;

p)      Whether Plaintiffs' and Class Members' reliance was justifiable;

q)       Whether Plaintiffs and the other Class Members were charged for the use of BMP-2/Infuse;

r)      Whether the billing statements for Plaintiffs and Class Members disclosed the use of BMP-2/Infuse;

s)      Whether the intraoperative reports of Plaintiffs and the other Class Members disclosed the use of BMP-2/Infuse;

t)      Whether Defendants concealed the true nature of the surgeries performed on Plaintiffs and the other Class Members.

u)      Whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, restitution, or injunctive relief; and

v)      Whether Plaintiffs and the other Class Members are entitled to damages and other monetary relief and, if so, in what amount.

83.     <u>Typicality</u>. Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, all Class Members were comparably injured through Defendants' wrongful conduct as described above.

84.     <u>Adequacy</u>. Federal Rule of Civil Procedure 23(a)(4): Each Plaintiff is an adequate representative for the Class because their interests do not conflict with the interests of the other

Class Members they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

85.     <u>Declaratory and Injunctive Relief</u>. Federal Rule of Civil Procedure 23(b)(2): Defendants, and each of them, have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

86.     <u>Superiority</u>. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Members of the proposed Classes to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I – FRAUD BY CONCEALMENT

87.     Plaintiffs reallege and incorporate by reference as if fully rewritten the previous paragraphs of this Complaint.

88.     Defendants intentionally concealed from Plaintiffs and Class Members Durrani's prior professional misconduct in order to induce Plaintiffs and Class Members to use Defendants' facilities and services.

89.     Defendants also intentionally concealed from Plaintiffs and Class Members the FDA notification warning about the limited uses of BMP-2/Infuse and the dangers associated with its improper use and Medtronic' contraindications in order to induce Plaintiffs and Class Members to use Defendants' facilities and services.

90.     Defendants also intentionally concealed from Plaintiffs and Class Members that BMP-2/Infuse would be used in Plaintiffs' surgeries in order to induce Plaintiffs and Class Members to use Defendants' facilities and services.

91.     Defendants intentionally concealed from Plaintiffs and Class Members their intent to use BMP-2/Infuse in a way not approved by the FDA and contraindicated by, Medtronic, its manufacturer.

92.     Plaintiffs and Class Members relied upon Defendants' intentionally false representations.  They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Plaintiffs had no way of knowing of Durrani's prior professional misconduct and of the concealed and improper use of BMP-2/Infuse in connection with their surgeries. Therefore, Plaintiffs' and Class Members' reliance was foreseeable and justifiable.

93.     Defendants intentionally concealed material facts concerning their compliance with FDA warnings.

94.     Had Plaintiffs been informed by Defendants that BMP-2/Infuse would be used in their surgeries in a manner that was not approved by the FDA or Medtronic, they would not have allowed BMP-2/Infuse to be used by in their surgeries.

95.     Defendants had a duty to disclose to Plaintiffs and Class Members all material facts regarding physicians to whom they granted privileges because they had exclusive knowledge with respect to those facts and knew that those facts were not known to or reasonably discoverable by Plaintiffs and Class Members.

96.     Defendants had also a duty to disclose to Plaintiffs and Class Members all material facts regarding the use of BMP-2/Infuse because they had exclusive knowledge with respect to those facts and knew that those facts were not known to or reasonably discoverable by Plaintiffs and Class Members. Defendants had a duty to disclose to Plaintiffs and Class Members Durrani's previous professional misconduct and the FDA notification warning about the use of BMP-2/Infuse because they knew those facts were not known to or reasonably discoverable by Plaintiffs and Class Members. Defendants also had a duty to disclose because it made general affirmative representations about the quality of their services misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding Durrani's professional misconduct and the FDA warning and Medtronic's contraindication with respect to BMP-2/Infuse.

97.     Defendants actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect their profits and they did so at the expense of Plaintiffs and Class Members.

98.     Defendants had a duty to provide true and accurate billing statements and true and accurate intraoperative reports to Plaintiffs and Defendants.

99.     On information and belief, Defendants still have not made full and adequate disclosure and continue to defraud Plaintiffs and Class Members by failing to inform Plaintiffs and Class Members that BMP-2/Infuse was placed in them during their surgeries.

100.     As a direct and proximate result of Defendants' concealments and/or misrepresentations regarding BMP-2/Infuse, and the nature and necessity of the surgeries at WCH/UCH, Plaintiffs sustained, among other things, economic, and non-economic (including physical and emotional) damages.

101.     Accordingly, Defendants are liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

102.     Defendant's actions and omissions were done wantonly, maliciously, deliberately and with intent to defraud and in reckless disregard of the rights, health and welfare of Plaintiffs and Class Members and in order for Defendants to enrich themselves. Therefore, Plaintiffs and Class Members are entitled to punitive damages, attorneys' fees and costs.

## COUNT II – OHIO CONSUMER SALES PRACTICES ACT VIOLATION

103.     Plaintiffs reallege and incorporate by reference as if fully rewritten the previous paragraphs of this Complaint.

104.     Although the Ohio Consumer Sales Practices Act, O.R.C § 1345.01 et seq., exempts physicians, a transaction between a hospital and a patient/consumer is not exempted from the act.

105.     At all times relevant to this action, Plaintiffs and Class Members were "consumers" as defined in O.R.C. § 1345.01(D) each of whom engaged in a consumer transaction (as defined below) with Defendants.

106.     At all times relevant to this action, Defendants' services rendered to Plaintiffs and Class Members constituted a "consumer transaction" as defined in O.R.C. § 1345.01(A).

107. Defendants intentionally omitted, suppressed and concealed from Plaintiffs and Class Members facts with the intent that Plaintiffs and Class Members rely on these omissions, suppressions and concealments as set forth herein.

108. Defendants' intentional misrepresentations, omissions, suppressions and concealments of facts, as described above, constituted unfair, deceptive and unconscionable acts and practices in violation of O.R.C §§1345.02 and 1345.03.

109. Defendants were fully aware that Plaintiffs and Class Members were induced by and relied upon Defendants' representations at the time Plaintiffs and Members decided to use the services of Defendants.

110. Had Plaintiffs and Class Members been aware that Defendants' representations as set forth above were untrue, Plaintiffs and Class Members would not have used Defendants' services and would not have expended monies to pay Defendants.

111. Defendants' actions and/or inactions and concealments were not the result of any bona fide errors.

112. As a direct and proximate result of Defendants' unfair, deceptive and unconscionable acts and practices, Plaintiffs and Class Members have suffered and continue to suffer damages, which include, but are not limited to, all compensatory damages, incidental and consequential, punitive damages, attorneys' fees and costs and other damages as allowed by law.

## COUNT III – NEGLIGENCE

113. Plaintiffs reallege and incorporate by reference as if fully rewritten the previous paragraphs of this Complaint

114. Defendants concealed from Plaintiffs and Class Members Durrani's prior professional misconduct in order to induce Plaintiffs and Class Members to use Defendants'

22

facilities and services. If not deliberately fraudulent, and in the alternative to that theory, these non-disclosures were negligent.

115.    Defendants also concealed from Plaintiffs and Class Members the FDA notification warning about the limited uses of BMP-2/Infuse and the dangers associated with its improper use and/or the manufacturer's contraindications in order to induce Plaintiffs and Class Members to use Defendants' facilities and services.

116.    Defendants also intentionally concealed from Plaintiffs and Class Members that BMP-2/Infuse would be used in Plaintiffs' surgeries in order to induce Plaintiffs and Class Members to use Defendants' facilities and services.

117.     Defendants concealed from Plaintiffs and Class Members their intent to use BMP-2/Infuse in a way not approved by the FDA and contraindicated by, Medtronic, its manufacturer.

118.    Plaintiffs and Class Members relied upon Defendants' false representations.  They had no way of knowing that Defendants' representations were false and gravely misleading. As alleged herein, Plaintiffs had no way of knowing of Durrani's prior professional misconduct and of the concealed and improper use of BMP-2/Infuse in connection with their surgeries.

119.    Defendants concealed material facts concerning their compliance with FDA warnings and Medtronic's recommendations.

120.    Had Plaintiffs been informed by Defendants that BMP-2/Infuse would be used in their surgeries in a manner that was not approved by the FDA or Medtronic, they would not have allowed BMP-2 to be used by in their surgeries and would not have paid for its use.

121.    Defendants had a duty to disclose to Plaintiffs and Class Members all material facts regarding physicians to whom they granted privileges because they had exclusive knowledge with

respect to those facts and knew that those facts were not known to or reasonably discoverable by Plaintiffs and Class Members.

122.    Defendants had also a duty to disclose to Plaintiffs and Class Members all material facts regarding the use of BMP-2/Infuse because they had exclusive knowledge with respect to those facts and knew that those facts were not known to or reasonably discoverable by Plaintiffs and Class Members. Defendants had a duty to disclose to Plaintiffs and Class Members Durrani's previous professional misconduct, the FDA notification warning about the use of BMP-2/Infuse and Medtronic's contraindications because they knew those facts were not known to or reasonably discoverable by Plaintiffs and Class Members. Defendants also had a duty to disclose because it made general affirmative representations about the quality of their services misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding Durrani's professional misconduct and the FDA warning and Medtronic's contraindications.

123.    Defendants concealed and/or suppressed these material facts, in whole or in part, to pad and protect their profits and they did so at the expense of Plaintiffs and Class Members.

124.    Defendants had a duty to provide true and accurate billing statements and true and accurate intraoperative reports to Plaintiffs and Class Members.

125.    On information and belief, Defendants still have not made full and adequate disclosure and continue to defraud Plaintiffs and Class Members by failing to inform Plaintiffs and Class Members that BMP-2/Infuse was placed in them during their surgeries.

126.    As a direct and proximate result of Defendants concealments and/or misrepresentations regarding BMP-2/Infuse, and the nature and necessity of the surgeries at WCH/UCH, Plaintiffs sustained, among other things, economic, and non-economic (including physical and emotional) damages.

24

127.     Accordingly, Defendants are liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

## COUNT IV – UNJUST ENRICHMENT

128.     Plaintiffs reallege and incorporate by reference as if fully rewritten the previous paragraphs of this Complaint

129.     As a result of Defendants' unlawful and deceptive actions and/or inactions as describe above and their intentional concealments of material facts, Defendants were enriched at the expense of Plaintiffs and Class Members.

130.     Under these circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiffs and Class Members. Thus, it would be unjust and inequitable for Defendants to retain the profits they made from the illegal and improper use of BMP-2 in the surgeries without restitution of the monies paid by Plaintiffs and Class Members to Defendants in connection with the surgeries.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves self and all others similarly situated, request the Court to enter judgment against the Defendants, as follows:

a)     An order certifying the proposed Class designating each of the named Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

b)     A declaration that Defendants are financially responsible for notifying all Class Members about the fraudulent billing and reporting of the improper and unconsented to use of BMP-2/Infuse in connection with Plaintiffs' and Class Members' surgeries;

c)      An award to Plaintiffs and Class Members of compensatory, all actual, exemplary, special, and statutory, treble and consequential, damages, including interest, in an amount to be proven at trial;

d)      An award to Plaintiffs and Class Members of punitive damages based on the intentional fraud, concealment, misrepresentations and deceit;

e)      An award to Plaintiffs and Class Members of a restitution amount that is the equivalent of the amount acquired by means of unfair, deceptive, fraudulent, unconscionable or negligent actions of Defendants as referenced in this Complaint, with interest from the time it was paid;

f)      A declaration that the Defendants must disgorge, for the benefit of Plaintiffs and Class Members, all or part of the ill-gotten profits they received from the fraudulent billing and reporting of the improper and unconsented to use of BMP-2/Infuse in connection with Plaintiffs' and Class Members' surgeries, or make full restitution to Plaintiffs and Class Members;

g)      A declaration by the Court, pursuant to Ohio Revised Code 1345.09(D), that the Defendants' actions constitute an unfair, deceptive, or unconscionable business practice under Ohio's Consumer Sales Practices Act, R.C. § 1345.01, *et seq.*;

h)      An award of attorneys' fees and costs, as allowed by law;

i)      An award of prejudgment and post-judgment interest, as provided by law;

j)      Leave to amend this Complaint to conform to the evidence produced at trial; and

k)      Such other and further relief as the Court deems appropriate under the circumstances.

**A TRIAL BY JURY IS HEREBY DEMANDED**

Dated: December 8, 2017                    STATMAN, HARRIS & EYRICH, LLC

**/s/ Alan J. Statman**
Alan J. Statman (0012045)
Sylvie Derrien (0072579)
441 Vine Street
3700 Carew Tower
Cincinnati, Ohio 45202
Phone: (513) 621-2666
Facsimile: (513) 621-4896
E-Mail: ajstatman@statmanharris.com
          sderrien@statmanharris.com
*Attorneys for Plaintiffs James Cuzzort, Terry*
*Collins and Sara Hauenstein and the proposed*
*Class*

**JURY DEMAND**

Plaintiffs make a demand for a jury under all claims.

                         /s/Alan J. Statman
                         Alan J. Statman (0012045)